# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA

Plaintiff

vs

CIVIL 96-2284CCC

SAN JUAN BAY MARINA, INC;
SHOOTERS WATERFRONT CAFÉ, INC.;

EDUARDO FERRER AS PRESIDENT OF
BOTH CORPORATIONS

Defendants



## OPINION AND ORDER

### INTRODUCTION

This is an action brought by the United States to compel defendants to remove allegedly illegally built structures extending into navigable waterways. It is before us on the government's Motion for Summary Judgment (**docket entry 57**). Defendants filed an opposition (**docket entry 69**) which included their own cross motion for summary judgment.

A review of the record and the supporting documentation reveals the following facts. San Juan Bay Marina, Inc., and Shooters, Puerto Rico, Inc., are two business entities incorporated under the laws of the Commonwealth of Puerto Rico. Eduardo Ferrer Bolivar is president of both corporations which are domiciled in San Juan, Puerto Rico. San Juan Bay Marina, Inc. is a corporation dedicated to the marina business. Its facilities are located in the San Antonio Channel, in navigable waters of the United States.

Shooters, Puerto Rico, Inc., opened a restaurant/bar facility in a building owned by San Juan Bay Marina, Inc. As part of its business, the marina applied to the United States Army

Case 3:96-cv-02284-CC   Document 76   Filed 03/31/2000   Page 2 of 7

CIVIL 96-2284CCC                                    2

Corps of Engineers (the Corps) for a series of permit applications to build structures which would be placed in the navigable waters of the United States.

Between December, 1983 and June 1989, the Corps issued a series of individual permits allowing the marina to construct the various requested elements. San Juan Bay Marina, Inc., later applied (Permit Application 891PI-91056) for the construction of a 40 x 40 foot platform. This permit application was denied in September, 1990 because the Puerto Rico Planning Board denied the requisite coastal zone certification.

Once again, on April 8, 1992, the marina applied for a permit to build a 40 x 80 foot platform. On May 18, 1992, the Corps issued General Permit Number 199250101 for the construction of a 40 x 80 foot platform in navigable waters. This permit, however, was contingent upon obtaining coastal zone certification or waiver from both the Planning Board and the Puerto Rico Environmental Quality Board (EQB). This contingency was clearly stated as Condition Number 10 of General Permit SAJ-22. As of this date, the certification and/or the waiver have never been obtained. Defendants nevertheless built a platform under this permit number, without complying with condition numbers 10 and 13 of the SAJ-22 Permit.

On or around May 18, 1992, San Juan Bay Marina Inc., filed for Nationwide Permit Number 3, the purpose of which was to reconstruct an existing pier. The number given to this application was also 199250101, inasmuch as it was requested in the same application as the 40 x 80 foot platform request. Said pier was converted from a wooden structure to a reinforced concrete structure with additional piles and was reconstructed approximately twice its original size, in violation of the conditions of that permit.

On August 4, 1993, San Juan Bay Marina Inc. filed yet another permit application, Number 199350118, for the construction of a 40 x 44 foot expansion to the 40 x 80 foot

AO 72A
(Rev.8/82)

structure which had previously been built without compliance. On October 21, 1993, the Corps notified defendants of its intent to issue the permit but, once more, it was conditioned on receiving coastal zone certification from the Planning Board. The marina was also advised that any work done prior to the Corps' approval would be a violation of federal law.

Defendants requested the coastal zone certification for the construction of the 40 x 44 foot platform from the Planning Board. On December 29, 1993, the Puerto Rico Department of Natural Resources informed the Planning Board that the structures which the defendants intended to construct, specifically the 40 x 44 foot platform and the swimming pool, were not water dependent activities and, therefore, it denied their approval. On February 28, 1994, the Planning Board denied coastal zone certification regarding said permit, resulting in ACE's denial of their application. Defendants never appealed the denial of the coastal zone certification. Notwithstanding the denial, defendants built such a structure, but to larger dimensions than those that had been requested. After construction, the area measured 40 x 57 feet and today it is a continuous structure which measures approximately 137 x 57 feet.

Defendants added another structure of rhomboid shape with dimensions of a minimum of 2,800 square feet. This structure, which has no permit from the Corps, was commonly known as the "sushi bar." This structure was built after ACE's Cease and Desist Order of July 5, 1995 regarding the unauthorized work related to the prior Permit Number 199350118. Defendants also built another pier without having a permit. On September 13, 1995, the Corps amended the Cease and Desist Order.

On November 30, 1995, defendants filed an after-the-fact permit application pertaining to all unauthorized structures. On November 30, 1995, pursuant to 33 C.F.R. §326.3(e) the Corps denied this application.

AO 72A
(Rev.8/82)

Title 33, United States Code Section 403 states:

> The creating of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army; and it shall not be lawful to excavate or fill, or in any manner location, condition, or capacity of, any port, roadstead, have, harbor, canal, lake, harbor of refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same.

Therefore, defendants have no legal basis for maintaining these illegally built structures. U.S. V. Pablo Hernandez, 979 F.Supp 70 (D.C. P.R. 1997).

Defendants allege that the court may not grant summary judgment in this case because an indispensable party, the government of Puerto Rico, is not included in this suit.

Fed.R.Civ.P. 19(a) provides in pertinent part:

A person ... shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical manner impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by result of the claimed interest.

The defendants contend that the Commonwealth of Puerto Rico is an indispensable party because it has interests in the structures. Aside from the fact that the Commonwealth of Puerto Rico cannot be sued in federal court because it has not waived its sovereign immunity to be sued, see Ortiz-Feliciano v. Toledo-Davila, 175 F.3d 37 (1st Cir. 1999), the structures in issue are not the property of the Commonwealth of Puerto Rico or of any of its agencies or

AO 72A
(Rev.8/82)

instrumentalities. They are owned by San Juan Bay Marina, Inc. built them based on the type of business that they conduct. San Juan Bay Marina, Inc. requested the permits granted by the Corps in order to build structures necessary for its business. The additional permits which were requested in this case, specifically the ones at issue, which were authorized by the Corps subject to obtaining the required state permits, were also initiated by the marina. The structures that were built without permits were also constructed by the marina for use by Shooters restaurant. They continue to benefit the marina.

San Juan Bay Marina, Inc. leases the land occupied by the physical marina; the water area is leased through a concession given by the Puerto Rico Department of Natural and Environmental Resources. The Commonwealth government played no role in the construction, planning or decision to file permit applications. Therefore, there is no basis upon which the Commonwealth would be entitled to have more than the original property, as it was initially leased.

Additionally, the deed leasing San Juan Bay Marina, from the Ports Authority, contemplates the addition of structures. At pages 12-13 it states:

> (z) THE LESSEE may make alterations, additions or substantial improvements or structures to the property that is the object of this contract with the previous written authorization of the AUTHORITY, the authorization of which will not be unreasonably denied----------
>
> (aa) The property title for all substantial improvements or structures except the removable facilities of "dry stack", made or installed by THE LESSEE in the leased area belonging to THE AUTHORITY, will belong to the LESSEE, but at the expiration of this contract, said title of property will be transferred to THE AUTHORITY, at no cost to it and free of any charges or liens, providing that <u>THE AUTHORITY will be able to require that THE LESSEE take away or demolish all or part of the alteration, additions, or improvements and return the property in its original state except for deterioration from normal use; that which THE LESSEE has no control over, and any "force majeure".THE LESSEE is obligated to carry out the removal or demolition of this works within a period of thirty (30) days after the expiration of the contract. . .</u>

(Our emphasis.)

It stretches the imagination to believe that the government would want to maintain structures of which it never approved and, in fact, for which it refused to grant the necessary permits that would have allowed their construction in the first place.

In this case, therefore, the Commonwealth cannot be considered an indispensable party to this suit; a judgment against the marina would not be prejudicial because the Commonwealth was never a party to the permit process before the Corps. The Commonwealth has a remedy through the term of the contract as set out above.

Defendants also allege that the federal government has no legal authority or standing to pursue a remedy which they argue is contrary to the public interest. In this case, however, defendants' argument is meritless since they never appealed the Corps' decision under the Administrative Procedure Act. The plaintiff is moving for summary judgment in light of all the facts and the evidence. Even in the context of summary judgment, an agency action is entitled to great deference. Under the Administrative Procedure Act, a court shall set aside an action of an administrative agency only where it is arbitrary, capricious, or an abuse of discretion. 5 U.S.C. §706(2)(A). The court shall not substitute its judgment for that of the agency. See Citizens to Preserve Overton Park, Inc., v. Volpe, 401 U.S. 402, 416 (1971). Preserve Endangered Areas of Cobb's History, Inc., v. U.S. Army Corps of Engineers, 87 F.3d 1242, 1247 (11th Cir. 1996); see also Town of Norfolk v. U.S. Army Corps of Engineers, 968 F.2d 1438 (1st Cir. 1992). The evidence submitted shows that the public interest was taken into consideration by the agency, in this case, the Corps when it reached its decision of contingently authorizing the permits requested and when it issued both cease and desist orders.

Defendants also allege that the cease and desist orders sent by the Corps are null since they were not signed by the District Engineer. Defendants' argument is invalid because the cease and desist order of July 5, 1995, plaintiff's Exhibit Number 18, contains the name of Colonel Terry L. Rice who was the District Engineer, but was signed by Edwin Muñiz, who at that time was the Chief of the Antilles Regulatory Section at the Corps in San Juan, Puerto Rico. According to federal regulation at 33 C.F.R §320 et.seq., it is the District Engineer who heads the Corps of each district. Pursuant to the authority delegated to him, he has been authorized to delegate in other office members certain duties., one of them being the authority to sign cease and desist orders. Pursuant to the Corps' Assignment Memorandum Number 91-12 at paragraph 2, the Chief of the Regulatory Section may sign these types of orders. In 1994, this memorandum was amended to include the Chief of the Regulatory Division, the Field Chief and the Branch Chief, Thus, Edwin Muñiz as Chief of the Regulatory Field Office was authorized to sign the cease and desist order of July 5, 1995.

For the above-stated reasons, we find that there are no material facts in issue. The defendants' Motion for Summary Judgment (**docket entry 69**) is DENIED. The government's Motion for Summary Judgment (**docket entry 57**) is GRANTED. Judgment will be entered accordingly.

SO ORDERED.

At San Juan, Puerto Rico, on March 31, 2000.

CARMEN CONSUELO CEREZO
United States District Judge